**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TERRENCE HEMBY,

                              Plaintiff,

       - v -                                          Civ. No. 9:14-CV-546
                                                          (BKS/DJS)
DR. FERRARI, *et al.*,

                              Defendants.


**APPEARANCES:**                              **OF COUNSEL:**


TERRENCE HEMBY
Plaintiff, *Pro Se*
01-A-1300
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN                     JOSHUA L. FARRELL, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Terrence Hemby, an inmate currently incarcerated at Franklin Correctional

Facility, brings this action pursuant to 42 U.S.C. § 1983. Dkt. No. 1, Compl. Plaintiff's remaining

claims allege that Defendants failed to provide him with adequate medical care in violation of the

Eighth Amendment and retaliated against him for exercising his First Amendment right to file

grievances. *Id.* Currently before the Court are Defendants' Motion for Summary Judgment and

Plaintiff's Cross-Motion for Summary Judgment, both filed pursuant to Federal Rule of Civil

Procedure 56.  Dkt. Nos. 40, Defs.' Summ. J. Mot.; 43, Pl.'s Summ. J. Mot.  For the reasons that

follow, the Court recommends that Defendants' Motion be **GRANTED** and Plaintiff's Motion be

**DENIED**.

# I.  BACKGROUND

Except where otherwise noted, the following material facts are undisputed.[1]  The relevant

events arise from Plaintiff's claims that Defendants denied him adequate medical treatment for a leg

ulcer while he was housed at Clinton Correctional Facility ("Clinton C.F.") in the custody of New

York Department of Corrections and Community Supervision ("DOCCS").

Plaintiff was transferred into Clinton C.F. on or about September 2, 2011.  Dkt. No. 40-1,

Cosimo Ferrari, M.D., Decl., dated July 14, 2015, at ¶ 4.  On January 23, 2012, Plaintiff began to

complain of an ulcer on his lower left leg.  *Id.* at ¶ 6; Dkt. No. 40-7, Joshua Farrell Decl., dated July

17, 2015, Ex. A, Ambulatory Health Record ("AHR"), at p. 241.[2]  The examining nurse noted that

the site was "very dry" and that there was "slight drainage and smell."  *Id.*  Plaintiff was given gauze

and A&D ointment for self-care.  *Id.*

On March 5, 2012, Defendant Nurse Badger noted that Plaintiff wanted an Unna boot

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises."  N.D.N.Y. L.R. 7.1(a)(3).  "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *Id.*  While Plaintiff's Counter-Statement of Material Facts is not supported by proper record citations, *see* Dkt. No. 56-2, Pl.'s Counter-Statement of Material Facts, in deference to Plaintiff's *pro se* status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").  Defendants also request that Plaintiff's Cross-Motion be denied on account of Plaintiff's failure to comply with Local Rule 7.1(a)(3).  Dkt. No. 56, Defs.' Resp. to Pl.'s Summ. J. Mot. at pp 1-2.  Again, while Plaintiff's Statement of Material Facts in support of his Motion for Summary Judgment fails to precisely comply with Local Rule 7.1(a)(3), Dkt. No. 43-1, Pl.'s Statement of Material Facts, the Court, exercising its discretion, declines to recommend that Plaintiff's Cross-Motion be denied on that basis alone.

[2] The AHR was filed separately with the Court.  Dkt. Nos. 41, 41-1 & 41-2.  Citations to the AHR are to the assigned pagination.

dressing. Dkt. No. 40-8, Defs.' Statement of Material Facts ("Defs.' SMF") at ¶ 13; AHR at p. 233. On March 10, 2012, Nurse Badger applied an Unna boot dressing to Plaintiff's ulcer. AHR at p. 232. At a follow-up to change Plaintiff's dressing on March 14, 2012, Nurse Badger noted that the site looked good and was healing, although there were still signs of infection and itching. AHR at p. 240. On March 16, 2012, the site was almost closed with no drainage. *Id.* In May 2012, the site looked good with a few small open areas. AHR at p. 238. Nurse Badger again saw Plaintiff on June 4, 2012, and Plaintiff requested 4" x 4" gauze bandages, A&D ointment, and ibuprofen. Dkt. No. 40-3, Dawn Badger Decl., dated July 14, 2015, at ¶ 6; AHR at p. 237. Beginning in April 2012, Plaintiff alleges that Defendants started giving Plaintiff dressing materials without examining his ulcer. Dkt. No. 56-2, Pl.'s Counter-Statement of Material Facts ("Pl.'s Counter-SMF") at ¶¶ 9-10. Plaintiff further alleges that he complained that he should not be changing his dressing on his own, but that his dressing should be changed in the clinic area. *Id.* at ¶ 13.

On June 28, 2012, Plaintiff complained that the ulcer was not healing. AHR at p. 236. There was an open area that was the size of a fifty-cent piece and drainage was noted. *Id.* Examining staff ordered an appointment with Defendant Dr. Ferrari. *Id.* Plaintiff was seen by Dr. Ferrari on July 3, 2012. AHR at p. 235. Dr. Ferrari recorded that Plaintiff's ulcer was open and presented no healing after five months. *Id.* Dr. Ferrari ordered a surgical consult. *Id.* On July 26, 2012, Plaintiff was given over-the-counter Motrin and Telfa pads. *Id.*

At his surgical consult on August 3, 2012, Plaintiff stated that he had scratched the area and that it had broken down. AHR at p. 205. The specialist observed an open area and green discharge and prescribed local care with Dakins 0.0125% solution twice daily. *Id.* On August 9, 2012, Nurse Badger provided Plaintiff with dressing materials, over-the-counter ibuprofen, and Telfa pads. AHR

at p. 234. On August 14, 2012, Dr. Ferrari provided Plaintiff with chlorhexadine, a substitute for Dakins 0.0125%, to wash the area twice daily for thirty days. Ferrai Decl. at ¶ 19; AHR at p. 234.

On September 4, 2012, Plaintiff received more dressing materials. AHR at p. 141. On October 15, 2012 and on November 27, 2012, Nurse Badger indicated that Plaintiff was to continue with self-care. AHR at pp. 138 & 140. Dr. Ferrari requested another surgical consult on October 18, 2012. AHR at p. 139. Plaintiff saw the specialist on December 21, 2012, who recommended that Plaintiff apply wet to dry dressings twice daily with Dakins 0.0125% solution and referred Plaintiff to a vascular specialist "for evaluation of veins and commencement of compression therapy." AHR at p. 198. The specialist noted that a skin graft was "not appropriate at this time." *Id.*

On January 3 and on February 7, 2013, Dr. Ferrari followed-up with Plaintiff and requested a consult with a vascular specialist. AHR at pp. 134 & 197. Nurse Badger saw Plaintiff on January 2, January 3, January 15, February 25, March 25, and April 5, 2013, and on each occasion provided Plaintiff with dressing materials in order that he could continue his self-care. Badger Decl. at ¶ 9.

Plaintiff had a consultation with the vascular specialist on April 3, 2013. Defs.' SMF at ¶ 37. The vascular specialist noted:

> Mr. Hemby has venuous insufficiency with an ulcer. I would typically use an Unna boot. The patient refuses an Unna boot thinking that the facility cannot apply the Unna boots in a medically appropriate manner. I can't comment on that having not been at the facility. The alternative option is to use some type of wound gel as a topical treatment, along with compression and elevation. Compression is of critical importance. He is expressing interest in skin grafting and I think it is reasonable for him to be referred to Plastic Surgery but I defer that to the facility. Since he is not able to come here on a weekly basis for Unna boots, I am happy to see him as needed and he can get topical treatment at the facility. I would be happy to see him at any point if there is concern from the facility.

Ferrari Decl. at ¶ 26. On April 9, 2013, Dr. Ferrari ordered knee-length TED stockings and wound gel, and Plaintiff's dressing was to be changed daily. *Id.* at ¶ 27; AHR at p. 131. Dr. Ferrari states that "[p]rior to this time there was no medical need for Clinton's medical facility to change Hemby's dressing on a daily basis." Ferrari Decl. at ¶ 27. From April 10, 2013 until June 12, 2013, Clinton C.F. staff changed Plaintiff's dressing on a nearly daily basis. AHR at pp. 104-30; Badger Decl. at ¶ 11; Dkt. No. 40-5, Joseph Damour Decl., dated July 13, 2015, at ¶¶ 6-7.

On May 8, 2013, Dr. Ferrari requested a plastic surgery consult for Plaintiff. Ferrari Decl. at ¶ 29; AHR at p. 72. On June 12, 2013, Defendant Nurse Practitioner Lashway discussed with Plaintiff the prior recommendation to use an Unna boot, changed weekly with debridement, and Plaintiff consented, in writing, to the plan of care. Dkt. No. 40-4, Amber Lashway Decl., dated July 14, 2015, at ¶ 7; AHR at p. 231. Plaintiff had his plastic surgery consult on June 14, 2013. Defs.' SMF at ¶ 48. The specialist recommended the application of an Unna boot, to be changed weekly. AHR at p. 72. The specialist further noted that Plaintiff could continue with conservative treatment or undergo debridement and a split thickness skin graft. *Id.*; Lashway Decl. at ¶ 8. DOCCS approved the debridement and split thickness skin graft procedure. Lashway Decl. at ¶ 8.

On June 14 and 19, 2013, Clinton C.F. medical staff applied an Unna boot to Plaintiff. AHR at pp. 103-04. On June 26, 2013, Plaintiff arrived at the clinic to have the Unna boot changed because he had removed it himself after it had gotten wet in the shower. AHR at p. 102. Nurse Lashway advised Plaintiff to report to the clinic if this occurred again in the future and stressed the need for compliance with the specialist's recommendations. *Id.* Plaintiff returned to the clinic on July 1, 2013, because his Unna boot had again gotten wet in the shower. AHR at p. 101. Plaintiff stated that "[i]t bothers me I don't think it's working so I add to it and besides I want my surgery

– if I get better I won't get surgery." *Id.* Plaintiff did not want the Unna boot, only some gauze and tape for dressing. *Id.* Nurse Lashway explained the consequences of not following the specialist's recommendations to Plaintiff and gave him gauze and tape. *Id.* On July 3, 2013, Plaintiff signed a refusal form for use of the Unna boot. AHR at p. 100. The refusal form stated that Plaintiff claimed that the boot "made his skin breakdown[,] caused and allergic reaction [and] extreme pain in leg." AHR at p. 230. Plaintiff was informed about the risks of not complying with the specialist's recommendations. *Id.* On July 5, 2013, Plaintiff appeared at the clinic for a dressing change. AHR at p. 99. Nurse Badger informed Plaintiff that because he was non-compliant with the Unna boot he would have to complete dressing changes himself and that if he needed materials he would have to sign up for routine sick call. *Id.*

Plaintiff was admitted to Albany Medical Center on July 8, 2013, for debridement and a split thickness skin graft of his ulcer. Defs.' SMF at ¶ 57. The surgery was performed on July 9 and Plaintiff was released on July 10. *Id.* The surgeon instructed Plaintiff to not remove his dressing and to follow-up in one week. AHR at p. 69. At the follow-up appointment on July 17, 2013, the surgeon noted a 100% take of the graft and that there were no signs of infection. AHR at p. 65. For the graft site, the surgeon ordered the application of Xeroform dressing and aquaphor to the surrounding dry skin two to three times a week. *Id.* Plaintiff was also to use an ace wrap and compression stocking for one week and Telfa pads and compression dressing thereafter. *Id.* Nurse Lashway reviewed the surgeon's recommendations with Plaintiff on July 18, 2013. AHR at p. 98.

On July 22, 2013, Nurse Badger, in accordance with the surgeon's orders, applied Xeroform dressing to the site and aquaphor to the surrounding dry skin, as well as gauze, an ace wrap, and compression stocking. AHR at p. 97. On July 24, 2013, Plaintiff signed a form refusing the

application of the Xeroform dressing and aquaphor and acknowledged the risks of not following the surgeon's orders. AHR at pp. 97 & 228. Plaintiff nonetheless allowed Nurse Badger to apply gauze, an ace wrap, and a TED stocking. AHR at p. 97. On July 29, 2013, Plaintiff only allowed Nurse Badger to apply gauze and aquaphor. AHR at p. 95. On August 2, 2013, Plaintiff again only allowed Nurse Badger to apply aquaphor and gauze, with the compression stocking to hold the dressing in place. AHR at p. 94. Plaintiff states that he knew the type of dressing that worked best from a prior skin graft. Pl.'s Counter-SMF at ¶¶ 51 & 62.

At a follow-up on August 14, 2013, Plaintiff's graft was 99% healed. AHR at p. 64. The specialist recommended application of bacitracin to the small open area and aquaphor to the surrounding area, as well as the use of Tefla pads and compression. *Id.* Nurse Lashway reviewed the consult with Plaintiff on August 15, 2013. AHR at p. 90. Nurse Badger examined Plaintiff's skin graft on August 5, 7, 12, 24, 25, and 29, 2013, and provided him with supplies to dress his wound in his preferred manner. Badger Decl. at ¶ 20. Defendant Nurse Damour saw Plaintiff for dressing changes on August 20, 21, and 27, 2013. Damour Decl. at ¶¶ 12-14. On September 12, 2013, Plaintiff was transferred to Wyoming Correctional Facility. Lashway Decl. at ¶ 30.

## II. STANDARD OF REVIEW

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law,

against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d at 1461.

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v.*

*Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Defendants seek summary judgment on the following grounds: (1) there are no disputed issues of material fact precluding summary judgment on Plaintiff's deliberate medical indifference and retaliation claims; (2) Plaintiff failed to exhaust his retaliation claims; (3) Defendant Johnson was not personally involved in the care of Plaintiff's ulcer; and (4) Defendants are entitled to qualified immunity. Dkt. No. 40-9, Defs.' Mem. of Law. Plaintiff's Cross-Motion seeks summary

judgment on his deliberate medical indifference claim.  Dkt. No. 43-2, Pl.'s Mem. of Law.

## A.  Deliberate Medical Indifference

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).  To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious."  *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious.  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  First, the court must determine "whether the prisoner was actually deprived of adequate medical care."  *Id.*  Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.*  The second inquiry is "whether the inadequacy in medical care is sufficiently serious."  *Id.* at 280.  In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious.  *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003).  The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain."  *Chance v. Armstrong*, 143 F.3d 698,

702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "[I]f the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations

omitted).

Liberally construed, Plaintiff alleges that Defendants deprived him of constitutionally adequate medical care and delayed his surgery.[3]

*1. Adequacy of Medical Treatment*

Plaintiff claims that Defendants deprived him of adequate medical care by failing to examine, clean, and dress his ulcer on a daily basis. Compl. at ¶¶ 33-34, 37 & 44. Instead, Defendants provided Plaintiff with materials to change his dressing himself in his cell. *Id.* at ¶¶ 34 & 37. Related to these allegations, Plaintiff further alleges that Defendants did not follow the orders of Plaintiff's consulting specialists in treating and dressing his ulcer. *Id.* at ¶ 40. Specifically, Plaintiff states that his consulting specialist ordered Plaintiff to have a wet to dry dressing twice daily, but that Defendants refused to follow that order and continued to provide Plaintiff with materials to change his own dressing. *Id.* at ¶ 22. Plaintiff also alleges that Defendants applied an Unna boot dressing that made his ulcer worse. *Id.* at ¶ 37.

Defendants argue that Plaintiff's claims that Defendants should have changed his dressing daily fail to evidence deliberate indifference on the part of any Defendant. Defs.' Mem. of Law at 5-15. The Court agrees. From when Plaintiff first complained of his ulcer in January 2012, he was examined numerous times in Clinton C.F.'s health clinic and was provided with dressing materials and pain medication. *See, e.g.,* AHR at pp. 235-41. When Plaintiff's ulcer did not show sufficient healing by July 2012, Dr. Ferrari ordered a surgical consult. Ferrari Decl. at ¶ 16. The specialist

---

[3] The Court notes Defendants' argument that Defendant Dr. Johnson was not personally involved in Plaintiff's medical care. Defs.' Mem. of Law at pp. 21-22. Plaintiff alleges that he sent three complaint letters to Dr. Johnson regarding the medical treatment that he received for his ulcer, to which she failed to respond. Compl. at ¶¶ 22-23. Because the Court recommends that summary judgment be granted on Plaintiff's deliberate medical indifference claims, it does not reach the issue of whether Dr. Johnson was personally involved in Plaintiff's medical care.

recommended local care with Dakins 0.0125% solution twice daily. AHR at p. 205. He did not recommend that Defendants change Plaintiff's dressing. Defendants provided Plaintiff with chlorhexadine, a substitute for Dakins 0.0125%, and continued to provide Plaintiff with dressing materials and pain medication. AHR at pp. 141 & 234. Plaintiff again received a surgical consult in December 2012, and the specialist recommended that Plaintiff receive wet-to-dry dressings twice daily. AHR at p. 198. Defendants continued to provide Plaintiff with dressing materials. AHR at pp. at 135 & 137. Plaintiff saw a vascular specialist in April 2013. Ferrari Decl. at ¶ 26. From April until June 2013, in accordance with the vascular specialist's recommendations, Clinton C.F. staff began to change Plaintiff's dressing on a nearly daily basis. AHR at pp. 104-30; Badger Decl. at ¶ 11; Dkt. No. 40-5, Damour Decl. at ¶¶ 6-7. Plaintiff had a another surgical consult in June 2013. Lashway Decl. at ¶ 8. The specialist noted that Plaintiff could continue with conservative treatment or undergo a skin graft. AHR at p. 72. Plaintiff elected to undergo surgery, and on July 9, 2013, the surgery was performed at Albany Medical Center. Lashway Decl. at ¶¶ 8 & 16.

In light of the record, Plaintiff's assertion that Defendants should have changed his dressing daily amounts to a mere disagreement over the proper treatment of his ulcer. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d at 703. "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). The conservative treatment provided by Defendants to Plaintiff was adequate. Defendants examined

Plaintiff's ulcer and provided him with supplies for cleaning and dressing it, as well as pain medication. Plaintiff had several consultations with specialists, who confirmed the conservative course of treatment. Notably, Defendants began to change Plaintiff's dressing daily in April 2013, in accordance with the recommendations of the consulting vascular specialist. Thus, nothing in the record demonstrates that Defendants' determination that it was medically unnecessary to examine Plaintiff's ulcer and change Plaintiff's dressing daily evidenced a conscious disregard of a serious risk of harm to Plaintiff.

In addition, Plaintiff's other assertions are contradicted by his medical records. Plaintiff claims that Defendants Nurse Badger and Dr. Ferrari failed to examine his ulcer, Pl.'s Counter-SMF at ¶ 23; however, medical records kept by those Defendants contain notes on the status of Plaintiff's ulcer. *See, e.g.,* AHR at pp. 235 & 240. To the extent that certain medical records do not evidence that those Defendants examined Plaintiff, that does not create a genuine issue of material fact as to those Defendants' state of mind. Plaintiff also asserts that Defendants did not provide wet-to-dry dressings in accordance with the recommendations of the consulting specialist he saw in December 2012. Compl. at ¶ 40. The specialist's recommendation, however, was consistent with the treatment Defendants were already providing, and which they continued. *See* AHR at p. 198; *see also* AHR at pp. 135-36. Finally, Plaintiff argues that Defendants applied an Unna boot dressing which made his ulcer worse. Compl. at ¶ 37. However, the application of a Unna boot was at the recommendation of a consulting specialist. Lashway Decl. at ¶ 8.

Accordingly, the Court recommends that Defendants' Motion be **GRANTED** and Plaintiff's Motion be **DENIED** as to Plaintiff's claims that Defendants were deliberately indifferent in denying Plaintiff adequate medical care.

*-14-*

## 2. *Delay in Treatment*

Plaintiff also claims that Defendants delayed his surgery. Compl. at ¶ 33. However, Plaintiff's medical records demonstrate that the surgery was not delayed. Plaintiff had four specialist consultations. Lashway Decl. at ¶ 4. Significantly, none of the specialists found that surgery was medically necessary. At Plaintiff's first consultation, the specialist recommended that Plaintiff's ulcer be cleaned with Dakins 0.0125% twice daily. AHR at p. 205. Plaintiff's second consultation confirmed that recommendation and noted that a skin graft was "not appropriate at this time." AHR at p. 198. At Plaintiff's vascular consultation, the specialist recommended an Unna boot or a "wound gel . . . along with compression and elevation." AHR at p. 193. The vascular specialist deferred to Plaintiff's surgical specialists as to the necessity of a skin graft. AHR at p. 195. Finally, at Plaintiff's third surgical consult, the specialist noted that Plaintiff could continue with conservative treatment or could undergo a skin graft. AHR at p. 72. Thus, none of the consulting specialists found that surgery was medically necessary and Plaintiff cannot establish that the surgery was delayed.

Accordingly, the Court recommends that Defendants' Motion be **GRANTED** and Plaintiff's Motion be **DENIED** as to Plaintiff's claim that Defendants were deliberately indifferent in delaying his surgery.

## B. Retaliation

Plaintiff claims that Defendants retaliated against him for filing grievances by providing him with inadequate care and delaying refills on Plaintiff's medications. Compl. at ¶ 50. Defendants argue that Plaintiff failed to exhaust his administrative remedies on his retaliation claims. Defs.' Mem. of Law at pp. 17-19. Alternatively, Defendants argue that Plaintiff's retaliation claims are

subject to summary judgment. *Id.* at p. 20.

*1. Exhaustion*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*,

267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Defendants submit the Declaration of Jeffery Hale, Assistant Director of the Inmate Grievance Program of DOCCS, to establish that Plaintiff did not properly exhaust his retaliation claims. Dkt. No. 40-6, Jeffery Hale Decl. at ¶ 1. Hale states that his duties include maintaining and overseeing the records DOCCS maintains for all inmate appeals with CORC. *Id.* at ¶ 2. Submitted with the Hale Declaration are a printout of all CORC appeals filed by Plaintiff and the appeals packets for each of the grievances that Plaintiff appealed to CORC after April 2012. *Id.* at ¶¶ 8-9; *see also* Hale Decl., Ex. A; Hale Decl., Ex. B, Pl.'s CORC Appeals Records.[4] Upon review of CORC's records, Hale attests that Plaintiff has not filed a grievance appeal with CORC related to his retaliation claims. Hale Decl. at ¶ 8.

However, the Court's review of CORC's records reveals that Plaintiff did exhaust certain of his retaliation claims. Specifically, in grievance CLA–6511–13, Plaintiff complained that Nurse Lashway improperly dressed his ulcer in retaliation for Plaintiff's grievances. Pl.'s CORC Appeals Records at p. 61.[5] Plaintiff appealed CLA–6511–13 to CORC and it appears that CORC issued a consolidated decision on the grievance along with CLA–6469–13. Hale Decl., Ex. A; Pl.'s CORC Appeals Records at p. 57. Thus, Plaintiff's retaliation claim based on the allegation that Nurse Lashway improperly dressed his ulcer was properly exhausted. However, Plaintiff's claim that Defendants retaliated against him by delaying refills on his medications was not raised in any of the

---

[4] Plaintiff's CORC Appeals Records were filed separately with the Court. Dkt. Nos. 41-3 & 41-4. Citations to Plaintiff's CORC Appeals Records are to the pagination assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

[5] Plaintiff also complained in CLA–6511–13 that Nurse Badger and Nurse Lashway denied Plaintiff a renewal permit for his sneakers in retaliation for his grievances. Pl.'s CORC Appeals Records at p. 62. Plaintiff did not raise this claim in his Complaint and therefore it will not be considered here. *See* Compl.

grievances he filed with CORC and therefore was not properly exhausted. *See* Pl.'s CORC Appeals Records.

Plaintiff's failure to exhaust his claim that Defendants retaliated against him by delaying refills on his medications is not the end of the matter. The Second Circuit has established a three-step inquiry for when the failure to exhaust may be excused: (1) administrative remedies were not, in fact, available to the inmate; (2) the defendant either waived or is estopped from raising the affirmative defense; or (3) there are "special circumstances . . . that justify 'the prisoner's alleged failure to comply with administrative procedural requirements.'" *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).

Here, administrative remedies were available to Plaintiff as he availed himself of the grievance process on at least five occasions at Clinton C.F. Hale Decl., Ex. A. Furthermore, Defendants properly raised the affirmative defense of exhaustion in their Answer, *see* Dkt. No. 19, Answer at ¶ 18, and Plaintiff has not alleged any conduct that would estop Defendants from asserting the defense. Plaintiff argues that he was unable to fully exhaust his retaliation claim because he was transferred to another facility and "the grievance never followed him." Pl.'s Counter-SMF at ¶¶ 83-84. "[Special circumstances] must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004). Several district courts have held that "an inmate's transfer to a new facility does not excuse him from pursuing a grievance to a final administrative resolution." *Carini v. Austin*, 2008 WL 151555, at *4 (S.D.N.Y. Jan. 14, 2008); *see also Cobbs v. Lamare*, 2015 WL 2452323, at *6 (N.D.N.Y. May, 21, 2015); *Finger v. Superintendent McFinnis*, 2004 WL 1367506, at *4 (S.D.N.Y. June 16, 2004).

Additionally, Plaintiff has not produced any evidence as to what this grievance related to, if it was properly filed, and when it was filed. In the absence of such evidence, Plaintiff's assertion that the grievance "never followed him" when he was transferred is insufficient to create an issue of material fact.

Accordingly, the Court recommends that Defendants' Motion to dismiss as unexhausted Plaintiff's retaliation claim based on delays in renewals in his medications be **GRANTED** but be **DENIED** as to Plaintiff's retaliation claim against Nurse Lashway based on improper dressing of his ulcer.

## 2. Retaliation Claim

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002). An "adverse action" is defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Id.* at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a

constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Plaintiff's claim that Nurse Lashway retaliated against him by improperly dressing his ulcer fails because he cannot demonstrate that he suffered an adverse action. Plaintiff alleges that Nurse Lashway applied an Unna boot on June 19, 2013, and changed it weekly. Compl. at ¶ 24. Plaintiff states that the Unna boot caused severe pain and made his ulcer bleed. *Id.* at ¶ 25. However, Plaintiff's medical records establish that the consulting specialists who saw Plaintiff recommended the application of an Unna boot changed weekly. AHR at pp. 72, 193. Because the application of an Unna boot was part of the medical treatment applied to Plaintiff's ulcer, it does not constitute adverse action. Moreover, Plaintiff has not shown any causal connection between the grievances that he filed and Nurse Lashway's application of an Unna boot. Plaintiff's conclusory assertion that the application of the Unna boot was retaliatory is insufficient to create an issue of material fact in order to survive summary judgment.

Accordingly, the Court recommends that Defendants' Motion be **GRANTED** as to Plaintiff's retaliation claim against Nurse Lashway based on improper dressing of his ulcer.[6]

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 40) be **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 43) be **DENIED** and that this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

---

[6] Because the Court recommends that Plaintiff's deliberate medical indifference and retaliation claims are subject to summary judgment, it does not reach Defendants' qualified immunity argument.

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  April 18, 2016
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge